Huey et vir *v.* Blue Ridge Transportation Company, Appellant.

Argued September 26, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

*Rufus S. Marriner,* with him *John F. Wiley,* of *Marriner & Wiley,* for appellant.

*John J. Moschetta,* for appellee.

OPINION BY MR. JUSTICE DREW, October 31, 1944:

Plaintiffs, Charles Huey and Margaret Huey, residents of Washington County, are husband and wife. Alleging damage and loss to them as a result of the negligence of defendant, Blue Ridge Transportation Company, a corporation engaged in the business of transporting persons for hire, they brought this combined action for compensation. In the suit of the husband the jury returned a verdict in favor of defendant. In that of the wife it returned a verdict in her favor for $20,000. The learned court below refused the motion for a new trial in the suit of the husband, and overruled the motions for a new trial and judgment n. o. v. in the suit of the wife, and defendant appealed from the judgment entered on the verdict. The husband did not appeal from the refusal of his motion for a new trial.

The facts demonstrate there is no merit in the appeal. On December 20, 1942, in broad daylight, on Route No. 40, near Taylor's Cemetery in Washington County, a regulation passenger bus, owned and operated for hire by defendant, and driven by its servant in the course of his employment, ran directly into the rear of an auto-

mobile owned and driven by plaintiff, Charles Huey, in which his wife, Margaret Huey, was a passenger and invited guest. At the time Huey was operating his automobile at a speed of about twenty miles an hour, on an upgrade, on its right side of the highway. The bus approached the Huey car from the rear at a greater speed and although the automobile was plainly visible, and directly in front of the bus, the driver admitted he did not see the automobile until he was within fifty or seventy-five feet of it. In explanation of the collision he said: ". . . he [Huey] stopped in front of the cemetery gate . . . so I tried to stop too and I discovered that the road was in a condition that I couldn't get stopped in time . . . I had applied my brakes and I noticed them locking up a little so that gave me an indication of the ice, and then I thought of going to the left and I discovered that I couldn't see far enough ahead to do that . . . At that point it [the road] was covered with snow, but there was ice underneath the snow . . . there was a slight knoll . . . I seen that I did not have the vision to pass so I tried to do the next best thing and that was to try to get stopped, but I didn't quite get stopped in time to prevent the collision." The testimony fully warranted the jury in concluding that the bus did not skid to any appreciable extent, and that the primary cause of the collision was the negligence of the driver in failing to observe the road, to see the automobile which was plainly visible before him, and have his bus at such distance and under such control that he could stop it, if necessary, to avoid a collision. That he approached plaintiff's car at a speed which prevented him from stopping in time to avoid running into it, when he first saw it fifty or seventy-five feet away, is almost conceded by the driver. His negligence is beyond question.

It seems obvious that the jury concluded that plaintiff, Charles Huey, did stop his automobile on the highway and without giving a signal of his intention to do

so, and that his negligence in this respect contributed to the accident, for which reason it returned a verdict for defendant in his case. But the jury also concluded that plaintiff, Margaret Huey, was a guest passenger in the car and was not guilty of any negligence. This latter conclusion is clearly supported by the testimony. We agree with the learned court below that there is no merit in the motion for judgment n. o. v.

Defendant asks a new trial in the suit of Mrs. Huey on the ground that the amount of the verdict is excessive. This can only be determined 'after a close observation of the nature and extent of her injuries, her age and condition of health before the accident, and the pain, suffering and inconvenience it caused her and will cause her. Compensation is the rule; it must be reasonable, but it must also be just, a full and fair allowance for the damage and loss sustained. Appellate courts are reluctant to interfere with the deliberate judgment of a jury as regards the amount of a verdict in a personal injury case, which is supported by the opinion and approval of the trial judge and the court en banc. This is so because the amount must be based upon the facts of the case and they are determined by the jury, which has seen and heard the witnesses and concluded what the true facts are, and applied to them the directions of the law concerning the elements of damage as announced by the trial court. The good sense of the jury and the experience of the judge are the best criterion for determining what amount is reasonable. Each case must be determined by its own facts and circumstances. Only in an extreme case, where the amount of the verdict is clearly excessive, where it can be definitely said the jury abused its discretion, should an appellate court reduce the verdict—and then only to bring the amount within the reasonable limitations of the facts and circumstances of that particular case.

On the day of this accident Mrs. Huey, the mother of six children, was a young, healthy, athletic woman,

thirty-six years of age. She is a high school and college graduate, and possesses a permanent teacher's certificate. Before her marriage she taught school, but since that time has not done any work for compensation. Prior to the injuries resulting from this accident, she did all the work of caring for her house and family, but thereafter, she has been a hopeless invalid, confined to bed or to a chair.

The testimony shows that when the bus ran into the rear of the automobile, she was thrown forward with great force and then backward into the seat, which broke as she struck it. She suffered an injury to the spine in the region of both sacroiliac joints; received an injury to the muscles, ligaments and tissues of the back, spine, hips and legs; she suffered an injury to the bones of both hips, causing her to be unable to walk without assistance. She suffered injuries to the pelvis resulting in displacement of bones of the pelvic region. All of the aforesaid injuries are of a permanent nature.

Mrs. Huey testified that since the accident until the date of the trial she had not been able to walk up or down steps, and that she is unable to get around in any manner unassisted due to her inability to walk and the pain about her lower back and limbs. She said she can only walk on a level floor when she places her arms about her husband's shoulders and that even then she can barely shuffle across the floor. Her one hip is higher than the other and one leg is longer than the other, due to her pelvic injuries. In order to get around, as she does with assistance and in a stooped position, she must wear a belt some 20 inches in width to support her back. She further stated that she is unable to get out of bed until this belt is adjusted, and she is helped to sit up on the side of the bed to put on her clothes. Her testimony was corroborated by that of her husband and other witnesses.

A review of the medical testimony discloses that not only the four physicians called by plaintiffs, but the one

called by defendant, testified that Mrs. Huey is totally and permanently disabled, and that she has suffered and will suffer great pain and inconvenience. The case was submitted to the jury in a charge against which there is no complaint, and the jury determined that $20,000 would be reasonable and proper compensation for the damages which she sustained. We are certain the amount is not excessive: *Schenkel v. Traction Co.,* 194 Pa. 182, 44 A. 1072; *Tyler v. Pittsburgh Railways Co.,* 343 Pa. 179, 22 A. 2d 738.

We have carefully considered the other assignments of error and find no merit in them.

Judgment affirmed.