## Connolly *v.* Philadelphia Transportation Company, Appellant.

Argued April 29, 1965. Before BELL, C. J., MUSMAN-
NO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*James Conwell Welsh,* for appellant.

*Mitchell A. Kramer,* with him *David C. Harrison*
and *Matthew Kramer,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, January 17, 1966:

On May 7, 1959, plaintiff-appellee sustained personal injuries as a result of a sudden stop of a bus owned by defendant-appellant and operated by its employee, Angelo Lapent. An action of trespass was instituted by appellee and culminated in a jury verdict for appellee. Appellant's motion for judgment n.o.v. and, in the alternative, for a new trial, was denied, and judgment was entered on the verdict of the jury; this appeal followed.

At approximately 5:00 p.m., Rose Mary Connolly, plaintiff-appellee, was a passenger on appellant's bus, traveling east in the second lane from the curb on South Penn Square, located on the south side of City Hall in Philadelphia, when a truck, which had entered South Penn Square from Broad Street, cut in front of the bus, causing the bus driver to stop the bus suddenly. Appellee, who had just risen from her seat preparing to disembark, was thrown to the floor with such force as to render her unconscious. Appellee sustained serious injuries to her person, and the jury awarded her $27,000.

Appellant contends: (1) that there was not sufficient evidence from which the jury could find the defendant-appellant was negligent; (2) that the verdict of $27,000 for damages was excessive; (3) that the trial court erred in its charge in allowing the jury to consider the awarding of compensation for future pain and suffering.

In considering a motion for judgment n.o.v., the evidence together with all reasonable inferences therefrom is considered in the light most favorable to the verdict winner. *Lewis v. United States Rubber Co.,* 414 Pa. 626, 202 A. 2d 20 (1964); *Pritts v. Wigle,* 414 Pa. 309, 200 A. 2d 386 (1964); *Chambers v. Montgomery,* 411 Pa. 339, 192 A. 2d 355 (1963), and in reviewing on appeal, we stated in *Vignoli v. Standard M. Freight,*

*Inc.,* 418 Pa. 214, 210 A. 2d 271 (1965) : "The grant or refusal of a new trial will not be reversed on appeal, absent an abuse of discretion or error of law which controlled the outcome of the case." See *Chambers v. Montgomery,* supra.

In *Roadman v. Bellone,* 379 Pa. 483, 108 A. 2d 754 (1954), we said: "We are reluctant to interfere with the deliberate judgment of the jury regarding the amount of a verdict in a personal injury case which is supported by the opinion and approval of the trial judge and confirmed by the court en banc: Huey et vir v. Blue Ridge Transp. Co., 350 Pa. 488, 491, 39 A. 2d 602."

A common carrier for hire, although not an insurer, owes to its passengers the highest degree of care. *Dayen v. Penn Bus Co.,* 363 Pa. 176, 69 A. 2d 151 (1949), and cases cited therein. In *Staller v. Phila. R. T. Co.,* 339 Pa. 100, 103, 14 A. 2d 289 (1940), in reiterating a long and well established rule, we stated: "It is well established by a long line of decisions that testimony indicating that a moving trolley car jerked suddenly or violently is not sufficient, of itself, to establish negligence in its operation. There must be a showing of additional facts and circumstances from which it clearly appears that the movement of the car was so unusual and extraordinary as to be beyond a passenger's reasonable anticipation, and nothing short of evidence that the allegedly unusual movement had an extraordinarily disturbing effect upon other passengers, or evidence of an accident, the manner of the occurrence of which or the effect of which upon the injured person inherently establishes the unusual character of the jolt or jerk, will suffice." See *Lambert v. Pgh. Rwys. Co.,* 405 Pa. 364, 175 A. 2d 870 (1961); *Schilling v. Pgh. Rwys. Co.,* 394 Pa. 126, 145 A. 2d 688 (1958).

The basis for an unusual or extraordinary stop by a bus resulting in injury to a passenger calls for some

explanation on the part of the common carrier, and although negligence may not be inferred from a sudden stop sufficiently explained, testimony of witnesses, however, that the excessive speed of the bus was a contributing cause of the accident certainly requires some explanation or rebuttal. In the instant case, the appellant did not attempt to explain or rebut the testimony of excessive speed. The driver of the bus, the person best acquainted with the speed of the bus, was absent from the witness stand. If the evidence produced by either plaintiff or defendant shows that the cause of the sudden stop was negligence on the part of the carrier, the carrier would necessarily, in the absence of contributory negligence, be liable to the plaintiff for damages resulting from the accident.

The testimony of a passenger on the bus indicates the vehicle was going between 25 and 30 miles per hour; that it was swaying from side to side, and that it was passing other vehicles. As the appellant did not place the bus driver on the stand, the explanation of the stop was left to the plaintiff, and this explanation provided sufficient evidence to make negligence on the part of the carrier a jury question.

Appellant in its brief relies upon *Schilling v. Pgh. Rwys. Co.,* supra, and the *Wilson, Bollar,* and *Cook* cases cited therein, and upon the most recent case of *Lambert v. Pgh. Rwys. Co.,* supra. In the *Lambert* case, there was no question of excessive speed. The bus driver, in taking the stand, gave sufficient explanation for the reason for the sudden stop. The *Schilling* case was similar, in that there was no evidence of any, let alone excessive, speed. In *Wilson v. Butler Motor Transit Co.,* 368 Pa. 479, 84 A. 2d 207 (1951), a child darted in front of the bus, making necessary the sudden stop, but again there was no evidence of excessive speed on the part of the bus. The driver would not be bound to anticipate that a child would dart from a

lawn where he was playing into the path of the vehicle. The *Cook v. P.R.T.*, 120 Pa. Superior Ct. 565, 182 A. 755 (1936) case also had no evidence of excessive speed which would indicate negligent operation of the streetcar. In *Bollar v. Pittsburgh Rys. Co.*, 153 Pa. Superior Ct. 199, 33 A. 2d 261 (1943), the evidence established as a matter of law that the plaintiff was contributorily negligent, and the operator of the street-car, called as a witness, was able to explain sufficiently the sudden stop. In the instant case, plaintiff's theory of defendant's liability is that the accident was caused by the defendant's negligence in that the operator of the bus drove at an excessive speed under the circumstances; that is, in driving on a straight-a-way on South Penn Square where traffic was coming into South Penn Square from South Broad Street, the bus driver, in operating his vehicle at a speed of 25 to 30 miles an hour when traffic was heavy, should have been aware that a condition might be created where it would be necessary for him to bring the bus to a sudden and abrupt halt because of traffic stopping in front of the bus, or cutting in front of it from another lane of traffic and causing an emergency stop. The circumstances of speed in a congested area of traffic swerving and cutting in front of other vehicles and, in the instant case, the truck negligently cutting in front of the bus, would place liability on the bus company if the bus was being operated at an excessive rate of speed and there was evidence from which the jury would be warranted in finding that under the circumstances the speed of the bus was excessive.

Plaintiff-appellee relies upon the principle expressed in *Vereb v. Markowitz*, 379 Pa. 344, 108 A. 2d 774 (1954), involving a similar factual pattern. In that case we said: "The accident occurred about 6:30 P.M., November 10, 1951, on Main Street in the Borough of Munhall . . . . Main Street, from the testimony, was a

very busy congested street, especially on Saturday evenings. . . . While there was testimony. . . . indicating that the [defendant's] car came to a stop immediately or within a few feet from the point of its impact with the boy, [the eyewitness] testified that [defendant] was travelling 35 or 40 miles per hour and that this speed was not decreased at any time . . . [defendant] was bound to realize that maintaining a speed of 40 miles per hour, the rate at which the jury under the testimony could find he was travelling, in the curtailed space for vehicular traffic, might cause injury to others, although he could not foresee the exact manner in which it might occur."

Defendant relies on the so-called jerk or sudden stop doctrine. This doctrine arises from the principle set forth in *Shedlock v. Wyoming V. Autobus Co.*, 340 Pa. 377, 379, 17 A. 2d 384 (1941) : " 'where the thing which causes the injury is shown to be under the management of the defendant, and the accident is such as, in the ordinary course of things, does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care.' " Defendant contends that because the plaintiff introduced evidence that the bus had to stop because a truck swerved in front of it, that the defendant cannot be liable. As we said in *Lambert v. Pgh. Rwys. Co.*, supra, when plaintiff relies upon this doctrine and there is a satisfactory explanation for the stop, the inference of negligence is rebutted. In *Wilson*, supra, we recognized the principle that where the explanation for the stop appears affirmatively from the evidence, there can be no imputation of negligence so long as the explanation itself does not disclose negligence. This doctrine is well settled in Pennsylvania as set forth in *Schilling*, supra, and cases cited therein, where we said: "In cases such as the present case, where appellants are relying

on the 'sudden stop' doctrine, the unusual or extraordinary character of the stop must be shown before the transit company is required to produce a reasonable and satisfactory explanation for the actions of the operator." In *Lambert,* supra, we said: " 'An inference of negligence on the part of the common carrier is not called for if its action is sufficiently explained.' Stopping to avoid a collision with a person or object has been recognized consistently as a sufficient explanation for a sudden stop."

If, however, in the explanation, negligence on the part of the carrier is shown to have contributed to the accident, the carrier is liable. If the plaintiff introduces evidence of defendant's negligence rather than relying upon the inference of negligence, the above stated rule is inapplicable. The jury, in considering the evidence, concluded that the bus driver's speed was excessive under the circumstances and contributed to appellee's injury.

Appellant's second contention is that the verdict was excessive. The granting or refusing of a motion for a new trial because of excessiveness is peculiarly within the discretion of the trial court and will not be interfered with by this court unless the record discloses a clear abuse of discretion. *Hall v. George,* 403 Pa. 563, 170 A. 2d 367 (1961). As we stated in *Kane v. Scranton Transit Co.,* 372 Pa. 496, 94 A. 2d 560 (1953), we will not hold a verdict to be excessive unless it is ". . . 'so grossly excessive as to shock our sense of justice.' ". (See other cases cited therein). In view of the severe injuries suffered by appellant, the long period of hospitalization required, her necessity to continue to wear a back support, and her testimony that she has continued to suffer from severe headaches, etc., we cannot say that our sense of justice was shocked. Plaintiff sustained special damages amounting to approximately $6,500. The jury in all probability made the

award for past, present and future pain and suffering, and we will not attempt to substitute our judgment for its in determining this monetary amount. *Skoda v. W. Penn Power Co.*, 411 Pa. 323, 191 A. 2d 822 (1963).

This brings us to the third point raised by appellant, that the trial court erred in its charge to the jury concerning future pain and suffering. We believe this contention is without merit. In *Wallace v. Penna. R. R. Co.*, 222 Pa. 556, 71 A. 1086 (1909), it was said: ". . . the jury may and should award compensation for future pain and suffering whenever the evidence furnishes just ground for the belief that such pain and suffering will likely or probably ensue. This standard has met with the approval and sanction of this court in every case, and that without qualification." (See cases cited therein). Appellee testified as to her continuing pain, of her necessity to wear a back brace, continuing headaches, etc. Her testimony is supported by that of her physician: "Q. Can you give us an opinion as to her prognosis? A. Well, my opinion in the prognosis would be that it is guarded. The patient continues to have headaches from the cerebral concussion, and it will last for time and time again. God only knows how long it will last. Secondly, the backache, she continues to complain of her back where the fracture was present at L-3, and pain down her legs and in the lower back because of the spasm that took place in those muscles when the fracture was present and the injury. *She will continue to complain of this condition* . . . (Emphasis supplied). Q. Is there any sign of recovery in the near future? A. *At the present time she shows no sign of complete recovery.*" (Emphasis supplied).

This testimony provided sufficient evidence for the jury to weigh in considering that appellee's pain and suffering would continue into the future.

Judgment affirmed.

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

I would reverse the judgment entered by the Court below and enter judgment non obstante veredicto for the Philadelphia Transportation Company. The speed of the bus was not the proximate cause of the accident in this case, and without this there was absolutely no evidence to establish that any negligence of the P.T.C. caused plaintiff's injuries.